# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**

**JUDGE**

# LETTER OPINION

April 15, 2009

Timothy Donald Barrow
Grist Mill Square
148 Main Street
Building 3
Lebanon, NJ 08833
*(Attorney for Plaintiff Magnum LTL, Inc.)*

Scott H. Bernstein
Hunton & Williams
200 Park Avenue
53rd Floor
New York, NY 10166
*(Attorney for Defendant The CIT Group/Business Credit, Inc.)*

> **Re:** **Magnum LTL, Inc. V. The CIT Group/Business Credit, Inc. et al.**
> **Civil Action No. 2:08-CV-05345(WJM)**

Dear Counsel:

This matter comes before the court of Defendant The CIT Group/Business Credit, Inc.'s ("CIT") motion to dismiss, or in the alternative to transfer venue to the United States Bankruptcy Court District of Delaware. The Court did not hold oral argument. Fed. R. Civ. P. 78. For the following reasons, CIT's motion to dismiss is **GRANTED**.

## BACKGROUND

Plaintiff Magnum LTL, Inc. ("Magnum") is an interstate motor carrier of goods, which is based in North Dakota. (Compl. ¶¶ 1-2.) In 2003, it entered into an alleged interline partner contract with non-party, New Jersey based, Jervic Transportation, Inc.

The agreement provided for the division of revenues for transportation of cargo.  (*Id.* at ¶ 4.)  Under the agreement, Jervic would originate the shipment of goods for hauling a certain distance and then transfer the goods to Magnum delivery.  (*Id.*)  After delivery, Jervic would bill the customers, who in turn would make payment to Jervic.  (*Id.*)  Based on freight invoices, Jervic would pay Magnum an apportioned amount.  (*Id.*)

From 2003 through December 2007, Magnum received monies from Jervic under this arrangement.  (*Id.* at ¶ 11.)  However, Magnum maintains that it is still owed $67,357.59.  (*Id.* at ¶ 12.)  In May 2008, Jervic filed for Chapter 11 in the United States Bankruptcy Court for the District of Delaware.  (*Id.* at ¶ 5.)

Prior to the bankruptcy, Jervic entered in a secured credit agreement with CIT, a New Jersey based bank.  (*Id.* at ¶ 13.)  Pursuant to the July 2006 agreement, CIT received a security interest in Jervic's accounts receivable and rolling stock.  (*Id.*)  Magnum alleges that based on this credit agreement CIT received, collected, or otherwise transferred monies due under Magnum and Jervic's alleged interline partner contract.  (*Id.*)

Magnum sent CIT a letter on September 16, 2008 demanding that CIT turn over the amounts due to Magnum from Jervic.  (*Id.* at ¶ 14.)  CIT refused to comply and Magnum filed the present action on October 29, 2008.  In Magnum's Complaint, it presents several theories for recovery, including breach of fiduciary duty as trustee, breach of contract, negligence, and conversation.  (*Id.* at ¶¶ 18-20.)  Magnum seeks the above stated amount, along with post-judgement interest, costs, and reasonable attorneys' fees.  (*Id.* at ¶ 23.)

In lieu of answering, CIT filed the present motion, which seeks a dismissal of Magnum's complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or in the alternative transferring of venue to the United States Bankruptcy Court District of Delaware under 28 U.S.C. § 1404.

## STANDARD OF REVIEW

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after

viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint need not contain detailed factual allegations, "the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id.* at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

## DISCUSSION

CIT urges the Court to dismiss this action for lack of subject matter jurisdiction. CIT maintains that the Court cannot exercise federal question jurisdiction–pursuant to federal common law–or diversity jurisdiction. Even if the Court possesses subject matter jurisdiction, CIT asserts that Magnum's claims for breach of fiduciary duty as trustee, breach of contract, negligence, and conversion must be dismissed for failure to state a claim.

### A.   Subject Matter Jurisdiction

*1.   Federal Question Jurisdiction*

Federal question jurisdiction supports claims founded upon federal common law as well as those of statutory origins.[1]  *National Farmers Union Ins. Cos. v. Crow Tribe*, 471

---

[1]  While Magnum cites to 28 U.S.C. § 1337(a) in its Complaint, this citation is superfluous. "[A]ny action that could be brought in federal court under § 1337 could also be brought under § 1331." *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 520 (3d Cir. 1998). Section 1337 is a grant of jurisdiction only and does not create a substantive claim. *B.F. Goodrich Co. v. Northwest Industries*, Inc., 424 F.2d 1349, 1354 (3d Cir. 1970). This section can be invoked only for cognizable claims that arise under an Act of Congress regulating commerce. 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3574, p. 235 (2d ed. 2003). As will be further discussed below, Magnum asserts state law claims, based on federal common law. Courts possess federal question jurisdiction over matters involving questions of federal common law pursuant to 28 U.S.C. § 1331. *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 850 (1985). Accordingly, Magnum cannot invoke federal question jurisdiction by merely citing § 1337(a).

U.S. 845, 850 (1985); *see also Illinois v. Milwaukee*, 406 U.S. 91, 100 (1972).  The Third Circuit has held that federal common law may be applied in matters involving the "interline trust doctrine."  *In re Lehigh & New England Railroad Co.*, 657 F.2d 570, 576 (3d Cir. 1981).

In *In re Penn Central Transportation Co.*, 486 F.2d 519 (3d Cir. 1973), the Third Circuit determined that an implied "interline trust" is created in situations involving the interstate shipment of goods via several commercial carriers.  The carrier that collects payment from the customer (typically the originating or destination carrier) holds the payment in trust for all other carriers involved in the transportation.  *Id.* at 524.  The Court identified six factors relevant to determine the existence of an interline trust, as opposed to a debtor-creditor relationship.  Such a trust may be implied, if in the aggregate, the following factors predominate: (1) there is no provision for payment of interest by the collecting carrier; (2) the collecting carrier does not commingle monies due to the other carrier with its general funds; (3) the carriers agree to apportion payments collected; (4) the amount the collecting carrier owes the other carrier directly relates to and depends upon the overall charge to the customer; (5) the collecting carrier must pay the other carrier only if the customer has paid it; and (6) the collecting carrier must pay the other carrier immediately upon settlement of the account, so that there is no "credit accommodation" for untimely payments.  *Id.* at 524-27; *see also In re Muma Servs., Inc.*, 322 B.R. 541, 556-57 (Bankr. D. Del. 2005).

As alleged, Magnum does not claim that CIT is a party to the purported interline partner contract between Magnum and third-party Jervic.  Rather, Magnum bases its claims for relief on the allegation that CIT collected and/or received monies generated under the interline partner contract between Magnum and Jervic by virtue of a separate security agreement between CIT and Jervic.  (Compl. ¶ 13.)  Pursuant to this security agreement, CIT held a security interest in Jervic's accounts receivable and rolling stock.  (*Id.*)

However, Magnum fails to substantiate its contention that the interline trust doctrine applies to the security agreement between CIT and Jervic.  There is no evidence that the parties expressly intended this security agreement to create a trust.  *See In re Hartman*, 254 B.R. 669, 673-74 (Bankr. E.D. Pa. 2000) (stating that "[w]ithout separate and express trust language, the Security Agreement creates no more than a debtor/creditor relationship.")  Moreover, the Complaint neglects to address the six relevant factors listed above.  Magnum does not assert that CIT, an admitted financial institution, acted as a collecting carrier or that Jervic did not pay interest under the security agreement.  Even when viewing the facts in a light most favorable to Magnum, the interline trust doctrine cannot apply to the present matter.  Accordingly, the Court lacks federal question jurisdiction pursuant to federal common law.

### 2.      *Diversity Jurisdiction*

In addition, Court cannot exercise subject matter jurisdiction on the basis of diversity jurisdiction. Even though the parties are diverse,[2] the amount-in-controversy falls below the statutory minimum of $75,000, excluding "interests and costs." 28 U.S.C. § 1332(a). Magnum seeks $67,357.59 along with reasonable attorneys' fees. (Compl. ¶ 23.)

When calculating the amount-in-controversy, courts must consider potential attorneys' fees. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997). Attorneys' fees are necessarily part of the amount-in-controversy only "if such fees are available to a successful plaintiff under a statutory cause of action." *Id*. Since Magnum brings common law claims, and not statutory claims, potential attorneys' fees relating to the instant case are not included in the calculation of the amount-in-controversy. *See Hayfield v. Home Depot U.S.A., Inc.*, 168 F. Supp. 2d 436, 459 (E.D. Pa. 2001). As such, Magnum's request is insufficient to satisfy the $75,000 threshold, depriving the Court of jurisdiction.

## B.      **Failure to State a Claim**

Assuming *arguendo* that this Court possesses subject matter jurisdiction, Magnum still fails to properly state a claim for breach of fiduciary duty as trustee, breach of contract, negligence, and conversion under New Jersey law. (Compl. ¶ 18.)

### 1.      *Breach of Fiduciary Duty*

With respect to Magnum's claim for breach of fiduciary duty as trustee, under New Jersey law, "[t]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *F.G. v. MacDonell*, 150 N.J. 550, 563 (N.J. 1997). The relationship arises when one party "is under a duty to act or give advice for the benefit of another on matters within the scope of their relationship." *Id*. Moreover, as general rule, no presumed fiduciary relations exists between banks and their customers. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 552 (N.J. App. Div.1997). This is due, in large part, to the adversarial nature of the debtor-creditor relationship. *Id.* at 553.

---

[2] Magnum is a corporation organized under North Dakota law and maintains its principal place of business in North Dakota. (Compl. ¶ 1.)  CIT is a corporation organized under New York law and maintains its principal place of business in New Jersey.  CIT also has designated its registered corporate agent in New Jersey. (Compl. ¶ 2.)

Here, Magnum fails to establish that a relationship between CIT and Magnum existed, much less one where Magnum placed "trust and confidence" in CIT.  The only potential trust relationship involves Magnum and third-party Jervic.  Without express or implied evidence that Magnum and CIT intended to enter into a trust relationship, Magnum cannot support a claim for breach of fiduciary duty.

2.     *Breach of Contract*

Similarly, Magnum's claim for breach of contract must be dismissed.  It is black letter law that to prove a cause of action for breach of contract the proponent must establish a valid contract, breach of that contract by the offending party, and damages.  *See, e.g.*, *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (N.J. App. Div. 1985).  As alleged, Magnum does not claim it entered into a contractual relationship with CIT.  The only contractual relationships cited in the Complaint are between Magnum and Jervic and CIT and Jervic.  (Compl. ¶¶ 4, 11-13.)  Therefore, Magnum fails to establish a cognizable claim for breach of contract.

3.     *Negligence*

As for Magnum's claim of negligence, under New Jersey law, a negligence cause of action contains four elements: (1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages.  *Weinberg v. Dinger*, 106 N.J. 469, 484 (N.J. 1987).  Regarding the first element, "the duty owed to another is defined by the relationship between the parties."  *NCP Litig. Trust v. KPMG LLP*, 187 N.J. 353, 382 (N.J. 2006).  Based on the Complaint, no relationship between Magnum and CIT exists.  Lacking such a relationship, Magnum cannot establish a duty of care, a breach of that duty, or any other of the other necessary elements for a negligence claim.

4.     *Conversion*

Finally, Magnum cannot maintain a claim for conversion.  To state a cause of action for conversion, a plaintiff must prove its entitlement to possession of the property, as well as "an act of the defendant wilfully done constituting a deprivation to plaintiff of such right to possession, i.e., an act by defendant of dominion over the property."  *Royal Store Fixture Co. V. New Jersey Butter Co.*, 114 N.J. Super. 263, 268-69 (N.J. App. Div. 1971).  In the instant matter, Magnum has not sufficiently pled that CIT "willfully" sought to deprive Magnum of funds.  Magnum contends that CIT collected accounts receivable pursuant to the secured credit agreement with Jervic.  There is no evidence that CIT had knowledge of the purported interline partner contract between Magnum and CIT, making it unlikely that CIT willfully sought to deprive Magnum of the allegedly owed funds.

6

## <u>CONCLUSION</u>

Based on the foregoing, CIT's motion to dismiss is **GRANTED**.[3]  An appropriate Order accompanies this Letter Opinion.

s/William J. Martini
**William J. Martini, U.S.D.J.**

---

[3]  Since the Court is granting CIT's motion to dismiss, the Court will not address CIT's request, in the alternative, to transfer this matter to the United States Bankruptcy Court District of Delaware, pursuant to 28 U.S.C. § 1404.